Argued March 17, affirmed June 4, 1970

# STATE OF OREGON, *Respondent, v.* DANIEL GULBRANDSON, *Appellant.*

470 P2d 160

*Oscar D. Howlett,* Portland, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

SCHWAB, C. J.

Defendant was indicted on two counts charging him, respectively, with possessing a motor vehicle with altered serial number (now ORS 481.990(6)) and possessing a stolen motor vehicle (now ORS 481.990(5)). Prior to trial he demurred to each count and filed a motion to suppress. The demurrers were overruled and the motion to suppress was denied. He entered a plea of not guilty and waived his right to trial by jury. The trial court found him guilty on both counts. On appeal the defendant makes two assignments of error.

His first assignment is that the demurrer to the count dealing with possession of a stolen motor vehicle should have been sustained on the ground that the indictment was unconstitutionally vague because rather than charging him with possessing the vehicle in question "knowing" it was stolen, it charged him in the language of the statute with "having reason to believe" the vehicle was stolen.

His argument is that the phrase "having reason to

believe" is not sufficient to charge a crime because it does not require "guilty knowledge" as a pre-requisite to a finding of guilty. He says that "use of the language 'having reason to believe' is no standard at all. Under this indictment it is simply up to a jury or a judge to determine what constitutes reason to believe." The indictment in the present case is substantially in the language of the statute and the demurrer was properly overruled if the statute is not unconstitutionally vague. *State v. Smith*, 182 Or 497, 188 P2d 998 (1948).

■■ The real question, then, is the validity of the statute. A criminal statute will be stricken down for indefiniteness only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction. *State v. Anthony*, 179 Or 282, 292, 169 P2d 587, cert den 330 US 826, 67 S Ct 865, 91 L Ed 1276 (1946). When a statute is capable of constitutional construction courts are not entitled to adopt a construction which will render the statute unconstitutional, but, on the contrary, are obligated to give it a constitutional interpretation. *State v. Hodges*, 254 Or 21, 457 P2d 491 (1969); *State v. Harmon*, 225 Or 571, 358 P2d 1048 (1961); *State v. Anthony*, supra.

There is no Oregon case precisely in point; however there are analogous cases. *State v. Aschenbrenner*, 171 Or 664, 138 P2d 911, 147 ALR 1052 (1943), dealt with a statute as it then existed, making it larceny to fail to report the taking of estrays. The statute contained no "knowledge" requirement. The court did not hold the statute unconstitutional, but, rather, read into it the requirement of "knowledge" on the part of the defendant and held that the circuit court erred in instructing the jury that the standard to apply in

judging the defendant was whether a man of ordinary intelligence and observation would believe that the animals in question were estrays.

State v. Opie, 179 Or 187, 170 P2d 736 (1946), dealt with a statute which made it a crime to take and use cattle without the authority of the owner. The statute there in question was also silent as to "knowledge" and the court, rather than hold the statute unconstitutionally vague, citing State v. Anthony, supra, read into the statute the requirement of "knowledge" on the part of the defendant. Thus it is clear that rather than declare a statute unconstitutional because it is silent as to any requirement of knowledge on the part of the defendant, a court will read such requirement into the statute. And, in the proper case we would read into the statute now before us such requirements of knowledge necessary to preserve its constitutionality. Whether anything short of "actual knowledge" is constitutionally sufficient is a question which has not been squarely answered in this state. This question may sometimes arise in connection with a requested jury instruction or motion for judgment of acquittal, or in some other manner, but it is not now before us.

■ In essence, the only question presented by defendant's first assignment of error is, "Did the state have the right to go to trial on the indictment as drawn?" This question must be answered in the affirmative. The statute is capable of constitutional construction, and is, therefore, constitutional. The indictment in the words of the statute is proper. The demurrer to the indictment was properly overruled.

■ Defendant's second assignment of error argues

that it was error to deny the motion to suppress evidence taken by the police pursuant to a search warrant. He argues that he did not give the police consent to enter into his residence garage where the car was located, and that the warrant authorizing the search of the automobile did not authorize entry into private premises to search for the automobile. The facts are that the police sought and received a warrant, the validity of which is admitted, authorizing them to search a described motor vehicle for an identification number located in it and to seize the identification number as evidence. The police, armed with a warrant, went to the defendant's business address and talked to him. The officers identified themselves, displayed the warrant to him and allowed him to read it. They then asked the defendant to go to his home with them. He asked the police if this was necessary. They did not directly answer him, telling him only that they had the warrant to search the car. He went with them to his home, opened the door of the garage in which the car was located. The police then searched the vehicle, found the number and seized it. The trial judge did not decide whether or not the defendant's action in opening the garage and letting the police in was voluntary, and we do not reach that issue here. The trial judge correctly ruled, "Under these circumstances the officers were justified in entering upon the defendant's premises and into his garage for the purpose of executing the search warrant."

ORS 141.110 provides:

"In the execution or service of a search warrant, the officer has the same power and authority, in all respects, to break open any door or window, to use all necessary and proper means to overcome any forcible resistance made to him or to call any

other person to his aid that he has in the execution or service of a warrant of arrest."

■ ORS 133.290 dealing with arrest provides:

"The officer may break open any outer or inner door or window of a dwelling house, or otherwise, to execute the warrant if, after notice of his authority and purpose, he is refused admittance."

It follows that if an officer may break and enter to effect an arrest he may break and enter to effect a search. To apply any other rule would be to require that search warrants be unnecessarily broad in scope. No constitutional purpose would be served by a rule that would make it more difficult to execute a search warrant confined to the very limited area in which the police had probable cause to believe they would find evidence of a specific crime.

Here the outer enclave of privacy was entered solely for the purpose of searching, under proper warrant, the inner enclave. We do not have before us and need not consider the problem of a warrantless search of an outer enclave occurring in connection with entry for the purpose of searching an inner enclave.

Affirmed.